**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **GUY N. GOREE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:18-cv-00072-O-BP** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| **Acting Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Guy N. Goree's Complaint (ECF No. 1) filed on May 22, 2018; Defendant's Answer (ECF No. 11) filed on July 30, 2018; Administrative Record consisting of Goree's Social Security Record (ECF No. 13) filed on July 30, 2018; Goree's Brief in Support of his Complaint (ECF No. 15) filed on August 31, 2018; and Defendant's Response (ECF No. 16) filed on October 1, 2018. After review of the pleadings and applicable law, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

## I.     STATEMENT OF THE CASE

Goree protectively filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") on March 31, 2015, initially alleging that his disability began on January 1, 2013. (Transcript ("Tr.") 19, 189). The Commissioner denied his application for benefits on July 22, 2015 and upon reconsideration on November 3, 2015. (*Id.* at 19). Goree requested a hearing, which was held before Administrative Law Judge ("ALJ") Douglas S. Stults on July 27, 2016. (*Id.*). Present at the hearing in Oklahoma City, Oklahoma were Goree, his non-attorney

representative, vocational expert ("VE"), and the ALJ. (*Id.*). At the hearing, Goree, through his representative, requested to amend his alleged disability onset date to May 2, 2014. (*Id.*). The ALJ issued his decision on May 22, 2017, finding that Goree was not disabled. (*Id.* at 19-33).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Goree had not engaged in substantial gainful activity since May 2, 2014, the amended alleged disability onset date. (*Id.* at 21). At step two, the ALJ determined that Goree had the severe impairments of rheumatoid arthritis, hepatitis C, infective endocarditis secondary to drug abuse, obstructive sleep apnea ("OSA"), morbid obesity, bipolar disorder, post-traumatic stress disorder, and poly-substance dependence. (*Id.* at 22). At step three, the ALJ found that Goree's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (*Id.*). Particularly, the ALJ concluded that Goree retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with excepted limitations. (*Id.* at 25). At step four, the ALJ determined that Goree was unable to perform his past relevant work. (*Id.* at 31). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that Goree could perform. (*Id.* at 32).

The Appeals Council denied review on December 15, 2017. (*Id.* at 1-4). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    FACTUAL BACKGROUND

According to Goree's pleadings, testimony at the administrative hearing, and the administrative record, he was 37 years old on the amended alleged disability onset date and 40 years old at the time of the administrative hearing. (ECF No. 15 at 6; Tr. 157). He completed a

high school education. (Tr. 157). His employment history included work as a truck driver, cashier, and construction worker. (*Id.* at 157-58). Goree asserts that his physical impairments render him disabled under the SSA.

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197

F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC— "the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

Goree raises one issue on appeal. He claims that the ALJ erred in finding that he retained the RFC for a reduced range of light work and that the RFC finding is unsupported by substantial evidence. (ECF No. 15 at 16). Goree argues instead that the ALJ only relied on the state agency's

medical examiners' assessment, which was based upon incomplete and conflicting medical evidence of record ("MER"). (*Id.* at 17-30). Goree alleges that the ALJ erred in relying on the medical examiners' assessment to arrive at the RFC finding because the assessment and RFC finding were not supported by substantial evidence in the record. (*Id.*).

The ALJ's RFC assessment was that Goree could perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b): (i) "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl;" (ii) "never climb ropes, ladders, or scaffolds;" (iii) "must avoid exposure to workplace hazards, such as dangerous moving machinery or unprotected heights," and "temperatures over 80 degrees and under 60 degrees;" (iv) "frequently reach, handle, finger, and feel;" (v) "understand, remember, and carry out simple instructions;" (vi) "make only simple work related decisions;" (vii) "deal with only occasional changes in work processes and environment;" (viii) "have no contact with the general public;" (ix) "have only incidental, superficial work-related type contact with co-workers and supervisors;" and (x) "cannot tolerate teamwork type jobs." (Tr. 25-26).

The ALJ evaluated Goree's MER and identified diagnoses of rheumatoid arthritis, hepatitis C, infective endocarditis secondary to drug abuse, OSA, morbid obesity, bipolar disorder, post-traumatic stress disorder, and poly-substance dependence. (*Id.* at 22). To arrive at the RFC finding, the ALJ made an assessment "based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." (Tr. 26). In other words, the ALJ assessed "the most [that Goree could] still do despite [his] limitations." *Perez*, 415 F.3d at 461-62; *see also* 20 C.F.R. § 416.945(a)(1). Substantial evidence supports the ALJ's determination on each of Goree's medical conditions.

### 1.    Rheumatoid Arthritis

With respect to Goree's rheumatoid arthritis, the ALJ determined that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26). There is substantial evidence in the record that supports this conclusion. For instance, the record demonstrates that Goree's rheumatoid arthritis has not resulted in "a recent fracture, [and] the joint spaces were satisfactory during a February 2015 assessment." (*Id.* at 27, 695). And despite Goree's persistent reports and testimony of joint pain, muscle stiffness, and intensity of musculoskeletal pain, his treating physician, Dr. Martin, noted that he had "normal gait; normal range of motion of all major muscle groups, no limb or joint pain with range of motion; muscle strength: 5/5 in all major muscle groups; normal overall tone spine: no scoliosis or other abnormal spinal curvatures." (*Id.* at 741, 793).

### 2.    Hepatitis C

The ALJ found and the MER supports that Goree had not suffered from fatigue, nausea, or loss of appetite, and that his liver functions were within normal limits with respect to his impairment of Hepatitis C. (*Id.* at 615, 737, 792, 798, 809).

### 3.    Ineffective Endocarditis Secondary to Drug Abuse

Additionally, the ALJ found that Goree's ineffective endocarditis secondary to drug abuse was treated and did not satisfy a severe impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 22-23, 809-811). The ALJ arrived at this conclusion by applying the standards set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 4.00 *et seq.* and 5.00 *et seq.* (*Id.* at 22). After arriving at this conclusion, the ALJ assessed Goree an RFC in which he could perform light work (*Id.* at 25). This is because Goree's endocarditis was treated and after hospital stays and doctors' visits, it was

controlled. (*Id.* at 417, 571, 627-630, 719, 808-811). This fact suggests that Goree's ineffective

endocarditis is not a chronic impairment and that he is successfully recovering. *See Johnson v.*

*Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (conditions that are controlled or that are controllable

by treatment are not disabling) (citing 20 C.F.R. §§ 404.1530, 416.930 and *Lovelace v. Bowen*,

813 F.2d 55, 59 (5th Cir. 1987)). Thus, there is substantial evidence in the record to support the

ALJ's conclusion that Goree's ineffective endocarditis does not prevent him from performing light

work.

4.    *Obstructive Sleep Apnea*

As for Goree's OSA, the ALJ looked to the substantial MER and noted:

> no issues with [his] pulmonary vasculature . . . [he] did not exhibit shortness of
> breath, wheezing or coughing . . . [his] prior pulmonary nodules on the left side had
> been resolved . . . no end organ disorders [were] apparent in his record resulting
> from his obesity . . . and [he] has been able to walk, and exhibited normal gait and
> range of motion in all of his major muscle groups.

(*Id.* at 597-98, 697, 793). Considering the ALJ's finding as to Goree's OSA and this corresponding

evidence, there is substantial evidence in the record to support the ALJ's finding.

5.    *Obesity*

With respect to Goree's obesity impairment, the ALJ "under[stood], and . . . considered,

that obesity can cause limitation of function." (*Id.* at 23). The ALJ noted that:

> [t]he combined effects of obesity with other impairments may be greater than might
> be expected without obesity. Accordingly, as per the requirements of Social
> Security Ruling 02-01, the [ALJ] considered the effects of [Goree's] obesity when
> determining [his] impairments, both singly or in combination . . . in determining
> [his] residual functional capacity. *Id.*

Social Security Ruling 02-01p discusses the complexity of obesity and how this impairment can

have exasperating effects on already-exiting health impairments, such as Goree's Rheumatoid

Arthritis, OSA, and mental health disorders. 65 F.R. 31039, May 15, 2000. Thus, in applying

7

Social Security Ruling 02-01p, the ALJ applied the correct legal standard in assessing Goree's severe impairments, including obesity, when arriving at his RFC.

Moreover, the ALJ assigned Goree an RFC in which he can perform light work. (Tr. 25). As defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), light work means Goree can only:

> occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; must avoid exposure to workplace hazards, such as dangerous moving machinery or unprotected heights; frequently reach, handle, finger, and feel; must avoid exposure to temperature over 80 degrees and under 60 degrees; understand, remember, and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; and only have incidental, superficial work-related type contact with co-workers and supervisors . . . and cannot tolerate teamwork type jobs . . . . (*Id.*).

Substantial MER supports the ALJ's conclusion that Goree's obesity and other severe impairments do not prevent him from performing light work. (*See id.* at 24, 27, 157-173, 175-79, 182-193, 195-206, 208-219, 222-234, 581-84, 597-98, 615, 636, 639, 662-63, 665-66, 695, 697, 737, 741, 792-93, 798, 809).

### 6.    *Poly-substance Dependence*

The ALJ also found and the MER supports a finding that Goree's poly-substance dependence has been in "sustained full remission since 2/2014," and Goree testified to this effect during his ALJ hearing. (*Id.* at 172-173, 584, 636). Thus, substantial evidence supports the ALJ's conclusion that this impairment would not affect Goree's ability to sustain gainful employment doing exertional activities associated with light work.

### 7.    *Mental Health Disorders*

As for Goree's post-traumatic stress and bipolar disorders, there is substantial MER that overrides inconsistencies between the objective medical evidence and Goree's testimony. For instance, treatment notes from the Helen Farabee Center, a mental health center, show that Goree

was "unable to make a decision and concentrate on a particular task." (*Id.* at 24, 639). Goree also submitted evidence that he was suffering from insomnia and unable to remember basic things. (*Id.* at 24, 662-63). There is substantial MER to the contrary, however, such as JSA Health's report that Goree was: "cooperative;" "polite;" his "insight" and "judgment [were] fair;" his "[a]ffect [was] mood congruent;" his "thought process [was] logical . . . [and] goal-directed;" he had "no delusions" or "hallucinations;" and that his recent and remote memory was "grossly intact" as was his attention, concentration, and impulse control. (*Id.* at 665-66). Thus, the substantial MER supports the ALJ's determination that these disorders would not interfere with his ability to perform light work exertional activities. (*Id.* at 583-84).

       8.    *Medical Opinion Evidence*

      In addition to the MER and objective medical evidence, the ALJ correctly considered the opinion evidence of Goree's treating physician (Dr. Martin), two medical doctors from the Helen Farabee Center (Drs. Smith and Nadoo), his psychiatrist (Dr. Miller), and the state's disability examiners (Drs. O'Callaghan, Rowley, and Herman). (*Id.* at 28-31).

      The ALJ accorded little weight to Dr. Martin's opinion because his conclusion that Goree "had been unable to work based on medical problems for 'the past few months' fails to satisfy the 12-month duration requirement under the Agency's regulations." (*Id.* at 29) (*see also* SSR 82-52, 1982 WL 31376 (1982)). Moreover, the ALJ determined that Dr. Martin's opinion was "a conclusory statement on the ultimate issue of disability, which is reserved to the Commissioner of the Social Security [Administration]." SSR 96-5p, 1996 WL 374183, at *2-3 (July 12, 1996). And while the ALJ must never ignore "opinions from any medical source on issues reserved to the Commissioner," these opinions

            are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the

authority to make the determination or decision about whether an individual is under a disability, and thus would be an adjudication on the Commissioner's statutory responsibility to determine whether an individual is disabled. *Id.*

The ALJ further determined that Dr. Martin's conclusory opinion was "wholly inconsistent with those of [Drs. O'Callaghan, Rowley, and Herman] and with the reported abilities of [Goree]." (Tr. 29). For instance, Dr. Martin reported that it was "unclear when and if [Goree] [would] be strong enough to work" even though Drs. O'Callaghan, Rowley, and Herman reported that Goree's impairments were not expected to last longer than 12 months and were unlikely to interfere with his ability to perform certain kinds of work. (*Id.* at 182-193, 195-206, 208-219, 222-234). Thus, there is substantial evidence to support the weight assigned by the ALJ to Dr. Martin's opinion.

Drs. O'Callaghan, Rowley, and Herman all concluded that Goree could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, which bolsters the ALJ's RFC finding. (*Id.*). Furthermore, Goree's testimony supports Drs. O'Callaghan, Rowley, and Herman's reports because he stated that he was ambulatory—albeit he described feeling pain when he moved too much—he nourished and cleaned up after his dog, occasionally went to church with his parents, did his own laundry, took out the trash, prepared his own meals, and passed a commercial driver's license physical examination in 2014. (*Id.* at 157-173). Plus, Goree received treatment for his diagnoses, which further supports the conclusion that his condition was gradually improving, and that the ALJ's RFC finding was based on substantial evidence. (*Id.* at 636, 697, 737, 798); *see also Johnson*, 864 F.2d at 348 (conditions that are controlled or that are controllable by treatment are not disabling) (citing 20 C.F.R. §§ 404.1530, 416.930 and *Lovelace*, 813 F.2d at 59).

The ALJ also relied on Drs. Miller, Nadoo, and Smith's opinion in assessing Goree's RFC. The ALJ afforded Dr. Miller's opinion partial weight because although she stated that despite

10

Goree's mental health treatment, his condition had progressed, she had not been his treating source for an extended treatment history. (Tr. 29, 581-84). Additionally, in a February 2016 mental health assessment, Goree exhibited normal results, reported that he was "doing 'ok,'" that his mood was "'pretty good,'" that he had "improved energy," and that he was sleeping well. (*Id.* at 636). Lastly, the ALJ explained that Drs. Nadoo and Smith's Global Assessment of Functioning ("GAF") examination was non-dispositive on the issue of Goree's RFC because it lacked standardization, did not provide a reliable longitudinal picture of Goree's mental functioning, and had no direct correlation to the severity requirements of the mental disorders' listings. (*Id.* at 30) (*see also* 65 Fed. Reg. 50746-01, 50764-65, 2000 WL 1173632 (Aug. 21, 2000)).

> 9.    *Goree's Arguments that Drs. O'Callaghan, Rowley, and Harman Relied on Incomplete and Conflicting MER During Their Initial and Reconsideration Assessments and that the ALJ should have Requested a Medical Source Statement are Without Merit*

Although Drs. O'Callaghan, Rowley, and Herman may not have had a complete MER at the time of their initial and reconsideration assessments as Goree noted (*see* ECF No. 15 at 18), there is still substantial evidence in the record to justify their assessments, as previously discussed. And the ALJ did not solely rely upon their assessments, which occurred approximately two years prior to the ALJ's decision. The ALJ's RFC finding differs from that provided by Drs. O'Callaghan, Rowley, and Herman. For instance, the ALJ found that Goree had postural and manipulative limitations that Drs. O'Callaghan, Rowley, and Herman did not find. (Tr. 189, 216, 230). Thus, Goree's reliance on *Washington v. Berryhill* is misplaced. No. 3:17-CV-0001-BK, 2017 WL 4422404 (N.D. Tex. Oct. 5, 2017) (where an ALJ's decision was reversed and remanded because the ALJ essentially adopted the state agency's medical examiners' opinions despite two years having passed between the date of those opinions and the ALJ's decision).

11

Finally, Goree argues that because Drs. O'Callaghan, Rowley, and Herman did not have complete MER when making their assessments, the ALJ should have requested "an updated medical source statement describing the types of work that [he] could perform given his limitations." (ECF No. 15 at 18). The ALJ, however, relied on the VE's testimony, which considered Goree's age, education, work experience, and RFC assessment limitations. (Tr. 175-79). The VE testified that, although Goree could not return to his past relevant work as a truck driver, he could be a mail sorter, mail clerk, or collator operator in private industry. (*Id.* at 175); *see also Dictionary of Occupational Titles* ("DOT") 222.687-022, 209.687-026, and 208.685-010. Although the VE testified that if Goree had to miss work frequently because of his impairments, he would be unable to sustain employment (Tr. 176-78), there was no evidence in the record to suggest that Goree would have to miss work frequently. Therefore, because the ALJ did not simply adopt Drs. O'Callaghan, Rowley, and Herman's assessments, arrived at a holistic RFC finding that is representative of the substantial evidence in the record, and relied on the VE's testimony, the ALJ did not err by failing to request an updated or supplemental medical source statement for Goree. (*Id.* at 19-33).

## V.    CONCLUSION

For these reasons, the ALJ did not err in finding that Goree (1) retained the RFC for a reduced range of light work and (2) the RFC finding is supported by substantial evidence.

### RECOMMENDATION

Because the ALJ applied the proper legal standards and substantial evidence in the record supports the ALJ's factual findings, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

It is so **ORDERED** on **January 22, 2019**.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

13